UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION
CIVIL CASE NO. 05-114-KKC

**Eastern District of Kentucky**
**FILED**

JUL 1 – 2005

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

DONALD C. LYNCH,                                                   PETITIONER

VS.                    **REPORT AND RECOMMENDATION**

PATTI WEBB, WARDEN,                                               RESPONDENT

**\*\*\*\*\*\*\***

     This matter is before the Court upon the "Petition for Writ of Habeas Corpus" (DE#1) pursuant to 28 U.S.C. §2254 by the pro se prisoner Donald C. Lynch. Having considered the entire record, including the Petition and Memorandum (DE#1),  Answer and Response (DE#9, 10), petitioner's Replies (DE#13, 14), and the respondent's Sur-Replies (DE#15, 16), the undersigned Magistrate Judge makes the following proposed findings of fact and conclusions of law:

## I. Findings of Fact

     In 1994, Donald Lynch's girlfriend "Teresa" left him to date Steven Dale Richmond. She eventually reunited with petitioner and married him in 1995. They had a child in 1996. About five years later, petitioner began to accuse her of having had sex with Richmond back in 1994. Lynch showed up at her workplace to confront her. Teresa moved out of the marital home, and in August of 1999, filed a petition for dissolution of the marriage. Lynch invited Richmond to move into the house, and Richmond did so. About 11:00 p.m. on September 29, 1999, Richmond and his girlfriend returned to the house he was sharing with petitioner. The three watched television until midnight, when Richmond and his girlfriend went to his bedroom. She left at approximately 1:30 a.m., and Richmond asked her to call him when she returned home. She did, but no one answered the telephone. She received no answer to a note she left at the house the next day.
     After Richmond's dead body was found, petitioner initially denied any knowledge of Richmond's whereabouts. He told police that Richmond had left the house immediately after his girlfriend on the night in question. Police obtained a

search warrant for petitioner's house and discovered that the mattress in Richmond's bedroom was missing. Three days after Richmond's funeral, Teresa met with petitioner to obtain documents pertaining to their pending divorce. She asked him if he had killed Richmond, and he admitted he had shot Richmond through the eye so Richmond "could never look at her again". Petitioner's description of the shooting matched the fatal injury to Richmond. Petitioner's rifle was consistent with the caliber of weapon used to kill Richmond.

During a police interview, Lynch changed his story and claimed he had found Richmond's corpse in the bed with Lynch's rifle next to it. He claimed he had loaned the rifle to Richmond and told police he feared the repercussions of finding a dead man in his house. He admitted that he had taken the body to a recreational area in Tennessee and left it on a bridge. He admitted that he had been unable to clean the bloody mattress, and had disposed of it in another county. Lynch had cleaned his rifle and put it back in his closet. On the day of Lynch's second interview, police caused a warrant to be issued for his arrest. Lynch found out about the warrant, changed his appearance by cutting and dying his hair, and fled to California. Lynch was indicted for murder, tampering with physical evidence, and abuse of a corpse.

Lynch was apprehended and received a jury trial in the Pulaski Circuit Court in Kentucky. Various witnesses, including petitioner's estranged wife Teresa, testified for the prosecution. The jury found petitioner guilty of murder and tampering with physical evidence. The charge of abuse of a corpse was dismissed. Lynch was sentenced to life imprisonment for the murder, and to five years for tampering with physical evidence, with the sentences to run concurrently. Lynch appealed his conviction, alleging that 1) Teresa's testimony should have been barred by "marital privilege", and 2) that the trial court should have granted a mistrial because the jury returned a verdict after only 29 minutes of deliberation.

On May 16, 2002, the Supreme Court of Kentucky affirmed Lynch's conviction and sentence. Lynch v. Commonwealth, Ky., 74 S.W.3d 711 (2002). On or about July 10, 2002, Lynch filed a motion pursuant to RCr 11.42 in the trial court, alleging ineffective assistance of counsel due to "conflict of interest" resulting from "joint representation". The trial court concluded that the record refuted Lynch's claim and denied the motion without a hearing on October 10, 2002. The Kentucky Court of Appeals affirmed, *see* Lynch v. Commonwealth,

2004 WL 1227259 (Ky. App.)[1], and the Supreme Court of Kentucky denied
discretionary review on November 10, 2004. On or about March 11, 2005, Lynch
filed this federal petition for writ of habeas corpus.

## II. Issues Presented

Petitioner seeks to invalidate his murder conviction by reasserting his
attenuated 11.42 claim that his counsel was constitutionally ineffective due to a
"conflict of interest" due to "joint representation". Petitioner complains that this
alleged "conflict" is the reason for various strategic decisions and alleged errors
made by counsel at the murder trial. For example, petitioner complains that his
counsel did not adequately try to blame petitioner's ex-wife, Teresa Lynch, for the
murder. Petitioner also claims that Teresa paid some of his attorney fees, thus
allegedly giving his counsel an incentive to not "properly" cross-examine Teresa.

The respondent asserts that the state courts properly rejected petitioner's
claim of "ineffective assistance of counsel due to conflict" because the record
refuted petitioner's claim of joint representation. The respondent asserts that
petitioner's claim was factually baseless and that petitioner has not overcome the
presumption of correctness for such facts with any clear and convincing evidence.

## III. Conclusions of Law

### Applicability of AEDPA,  Successiveness

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")
applies to habeas petitions, like the present one, that were filed subsequent to its
effective date of April 24, 1996. Penry v. Johnson, 532 U.S. 782, 121 S.Ct. 1910,

---

[1]The Kentucky Court of Appeals found that the trial court had properly decided the 11.42
motion without a hearing and observed that "conclusory allegations which are not supported by
specific facts do not justify an evidentiary hearing because RCr 11.42 is does not require a
hearing to serve the function of a discovery deposition." The Kentucky Court of Appeals aptly
pointed out that "the circuit court was not required to hold an evidentiary hearing so Lynch could
go on a fishing expedition in hopes of proving a nonexistent conflict." Lynch v. Commonwealth,
2004 WL 1227259 at *3 (Ky. App.), citing Hodge v. Commonwealth, 116 S.W.3d 463, 468 (Ky.
2003)("An evidentiary hearing is not necessary to consider issues already refuted by the record in
the trial court.").

1918, 150 L.Ed.2d 9 (2001); <u>Williams v. Taylor</u>, 120 S.Ct. 1495, 1518 (2000). Initial review of a federal habeas petition requires this Court to determine whether a federal petition is "successive". See 28 U.S.C. §2244(a); <u>In re Sims</u>, 111 F.3d 45 (6th Cir. 1997)(per curiam). The petitioner indicates he has not filed any other petitions, and the record does not reflect any.

**Statutory Jurisdiction**

Pursuant to 28 U.S.C. §2254(a), "... a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States. At the time this petition was filed, petitioner was incarcerated under the challenged murder conviction at Green River Correctional Complex in the state of Kentucky.

**One-Year Period of Limitations**

Amended 28 U.S.C. §2244(d)(1) provides that "a 1-year period of limitations shall apply to an application for a writ of habeas corpus... [t]he limitation period shall run from the latest of the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review..." or several other dates which do not apply to this case. The period of limitations is tolled during the time that "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. §2244(d)(2). The pendency of properly-filed state collateral relief merely tolls the federal period of limitations, it does not "re-start" it. <u>Payton v. Brigano</u>, 256 F.3d 405, 408 (6th Cir. 2001), *cert. denied*, 122 S.Ct. 1081 (2002); <u>McClendon v. Sherman</u>, 329 F.3d 490, 493-94 (6th Cir. 2003); <u>Allen v. Yukins</u>, 366 F.3d 396, 401 (6th Cir. 2004).

On May 16, 2002, the Supreme Court of Kentucky affirmed Lynch's conviction and sentence. Defendant pursued state post-conviction relief from July 10, 2002 until November 10, 2004, when the Supreme Court of Kentucky denied discretionary review. Lynch signed his federal habeas petition on March 7, 2005, and presumably gave it to prison authorities for mailing on such date. Under the "mailbox rule" for pro se prisoners, this is presumed to be the date of filing. <u>Cook v. Stegall</u> 295 F.3d 517, 521 (6th Cir. 2002). Assuming that petitioner's state post-conviction motions and appeals were "properly filed" (i.e. timely), petitioner's

"untolled" time totals less than one year. Thus, he timely filed this federal habeas petition within the one-year period of limitations.

**Exhaustion**

Pursuant to 28 U.S.C. §2254(b)(1), a district court may not grant habeas relief to a prisoner unless available state remedies have been exhausted. To satisfy the exhaustion requirement, the defendant must "fairly present the substance of each of his federal constitutional claims to the state courts" before raising such claim on habeas. Carter v. Bell, 218 F.3d 581 (6th Cir. 2000); Hannah v. Conley, 49 F.3d 1193, 1196 (6th Cir. 1995). A state prisoner must then complete any appeals through the *highest* level of the state courts before seeking federal habeas relief. Rogers v. Howes, 144 F.3d 990 (6th Cir. 1998); Hafley v. Sowders, 902 F.2d 480, 485 (6th Cir. 1990); Silverburg v. Evitts 993 F.2d 124, 126 (6th Cir. 1993). The present petitioner argued attorney ineffectiveness due to conflict of interest in his 11.42 motion, and fully appealed such claim.

Such claim, *on the grounds raised and appealed in the state courts*, is exhausted for purposes of federal habeas corpus review. To the extent he attempts to raise new grounds, such grounds are not cognizable here. On federal habeas, a petitioner must present his constitutional claims on the same ground under the same theory that was argued in state court. See Lorraine v. Coyle, 291 F.3d 416, 425 (6th Cir. 2002)("Petitioner's ineffective assistance counsel claims raised on federal habeas rest on different theories than those raised in the state post-conviction proceedings, and are therefore procedurally defaulted"); Wong v. Money, 142 F.3d 313, 322 (6th Cir. 1998), *cert. denied,* 122 S.Ct. 1106 (2002) (holding habeas claim defaulted because petitioner argued it on a theory "separate and distinct from the one previously considered and rejected in the state court"); Lott v. Coyle, 261 F.3d 594, 607, 619 (6th Cir. 2001)(holding that mere "related" argument previously raised did not save new habeas claim from being defaulted); Roberts v. Carter, 337 F.3d 609, 613 (6th Cir. 2003)(same).

**Standard for Habeas Review**

Federal habeas review is governed by the standard set forth in the AEDPA, which provides that:

"An application for a writ of habeas corpus on behalf of a person in

custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d).

The United States Supreme Court has explained that a state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000). In Williams, the Supreme Court explained that an "unreasonable application" occurs when "the state court identifies the correct legal principle from this Court's decision but unreasonably applies that principle to the facts of the prisoner's case." Id.

The United States Supreme Court observed in Bell v. Cone, 122 S.Ct. 1843, 1850-51 (2002) that the focus of inquiry under the "unreasonable application" prong is whether the state court's application of clearly established federal law was "objectively unreasonable".

**Presumption of Correctness**

The AEDPA further provides in 28 U.S.C. §2254(e)(1) that:

> "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

The "presumption of correctness" requires that this Court give appropriate deference to state court findings of fact supported by evidence. See McQueen v.

Scroggy, 99 F.3d 1302 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997);  Carter
v. Bell, 218 F.3d 581 (6th Cir. 2000)(amended AEDPA standard requires greater
deference to state courts and applies to habeas cases filed after the effective date
of the AEDPA); Campbell v. Coyle, 260 F.3d 531, 539 (6th Cir. 2001).

**Issue on Habeas: Whether the State Courts' Rejection of Petitioner's Claim
of "Ineffective Assistance of Counsel Due to Conflict of Interest" was
Contrary to, or an Unreasonable Application of Clearly Established Federal
Law, as Determined by the Supreme Court of the United States**

On federal habeas review, a "claim of ineffective assistance of counsel
presents a mixed question of fact and law; we therefore apply the 'unreasonable
application' prong of §2254(d)(1)." Barnes v. Elo, 339 F.3d 496, 501 (6th Cir.
2003), *cert. denied*, 540 U.S. 1164 (2004). A state court unreasonably applies
Supreme Court precedent "if the state court identifies the correct governing legal
rule ... but unreasonably applies it to the facts of the particular prisoner's case."
Williams, 529 U.S. at 407, 120 S.Ct. at 1521. In the present case, the trial court
and Kentucky Court of Appeals correctly identified the United States Supreme
Court's decision in *Strickland* as governing claims of ineffective assistance of
counsel.

To make out an ineffective assistance of counsel claim under the Sixth
Amendment, a petitioner must demonstrate objectively deficient performance by
defense counsel and resulting prejudice. Strickland v. Washington, 466 U.S. 668,
104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "The benchmark for judging any claim of
ineffectiveness must be whether counsel's conduct so undermined the proper
functioning of the adversarial process that the trial cannot be relied upon as having
produced a just result. Id. 466 at 686. "There is a strong presumption that an
attorney's performance falls within the wide range of reasonable professional
assistance." Id., 104 S.Ct. at 2065. "[T]he defendant must overcome the
presumption that, ... the challenged action might be considered to be sound trial
strategy." Id.

With respect to the prejudice prong, the Supreme Court in *Strickland* further
explained that "[i]n *Cuyler v. Sullivan*, 446 U.S., at 345-350, 100 S.Ct., at 1716-
1719, the Court held that prejudice is presumed when counsel is burdened by an
actual conflict of interest." Strickland, 466 U.S. at 692, 104 S.Ct. at 2067
("Prejudice is presumed only if the defendant demonstrates that counsel actively
represented conflicting interests and that an actual conflict of interest adversely

affected his lawyer's performance."); and see, <u>Mickens v. Taylor</u>, 535 U.S. 162, 163, 122 S.Ct. 1237, 1239 (2002)(explaining that under *Sullivan*, absent objection, "a defendant must demonstrate that a conflict of interest actually affected the adequacy of his representation"). "A possibility of conflict is insufficient to establish a violation of Sixth Amendment rights, and no violation occurs where the conflict is irrelevant or merely hypothetical." <u>Harbison v. Bell</u>, – F.3d –, 2005 WL 991377, *12 (6ᵗʰ Cir. (Tenn.)); see also, <u>Moss v. United States</u>, 323 F.3d 445, 463-64 (6ᵗʰ Cir.), *cert. denied*, 540 U.S. 879 (2003); <u>Smith v. Hofbauer</u>, 312 F.3d 809, 814 (6ᵗʰ Cir. 2002), *cert. denied*, 540 U.S. 971 (2003).

In Lynch's 11.42 motion, he complained of "ineffectiveness" due to "conflict" arising from his counsel's alleged "joint representation" of him and his ex-wife. He alleged she paid some of his attorney fees in the divorce case. Lynch claimed that this created a conflict that adversely affected his representation on criminal charges. He disputes various strategic decisions by counsel. However, as the respondent correctly points out, see DE#9, p. 31, Lynch failed to show joint representation. The state courts rejected his claim of ineffectiveness because the record refuted the factual premise of his argument.

The Kentucky Court of Appeals affirmed the trial court's denial of petitioner's 11.42 motion, holding in relevant part:

> "The record ... refutes Lynch's claim because the only time Teresa required representation was during her divorce from Lynch, when Lynch's criminal trial counsel represented him, and Teresa was represented by other counsel". <u>Lynch v. Commonwealth</u>, 2004 WL 1227259, *1 (Ky. App.).

The Kentucky Court of Appeals observed that Lynch had not shown any "joint representation":

> "...[A]s the trial court notes, the record shows that Teresa was represented by the Hon. Melinda Gillum Dalton both before and during Lynch's trial. Thus, the record on its face refutes Lynch's allegation that a conflict existed because his trial attorney represented Teresa." <u>Id</u>. at *2.

The Kentucky Court of Appeals also approved the trial court's holding that:

> "The fact that Defendant's trial attorney was also his attorney in his divorce case does not constitute a conflict of interest, and did not in any way render

his trial counsel ineffective." Id. at *2.

Although Lynch argued on post-conviction appeal that "even if there were no conflicts, his other allegations indicate ineffective assistance of counsel", the Kentucky Court of Appeals rejected such notion, holding:

> "As for Lynch's other allegations, Lynch argued in his 11.42 motion that the alleged conflict of interest was the foundation for all his subsequent allegations. The record shows that Lynch's trial attorney never represented Teresa; thus, it refutes Lynch's allegation of conflict. Absent this foundation, Lynch's remaining allegations fail and need not be further addressed." Id. at *3.

In other words, the Kentucky Court of Appeals considered the precise arguments raised by Lynch in his 11.42 motion and did not allow him to change the basis for his arguments on appeal. See Lynch v. Commonwealth, 2004 WL 1227259, *1 ("Lynch contended [in his 11.42 motion] that this conflict of interest was the foundation of all the subsequent errors his counsel committed.").

Finally, the Kentucky Court of Appeals affirmed the trial court's denial of Lynch's motion to disqualify the Commonwealth Attorney's office at the criminal trial. The trial court held that Lynch had not shown any attorney conflict relevant to his own representation due to the fact that his ex-wife's counsel, Melissa Gillum Dalton, was married to an assistant commonwealth attorney. Id. at *2. The record reflects that Dennis W. Shepard, Esq., not Dalton's husband, prosecuted the case for the Commonwealth. The Kentucky Court of Appeals thoroughly addressed every possible variation of "conflict" alleged by petitioner and found no merit in his contentions.

On habeas review, petitioner has not shown that the state courts unreasonably applied *Strickland* to the facts of his case, nor has he shown that the state courts made an "unreasonable determination" of the facts in light of the evidence presented in the state proceedings. Although petitioner argued that joint representation resulted in a "conflict of interest", the state courts rejected such claim because the record flatly refuted the petitioner's underlying factual allegation of joint representation. The record plainly showed that petitioner and Teresa were *not* represented by the same counsel. Petitioner and Teresa had separate attorneys in the divorce proceedings. Petitioner's counsel, Bruce Singleton, represented Lynch in the divorce and at the criminal trial. At the

criminal trial, Teresa was a witness, not a co-defendant. Petitioner did not show joint representation as co-defendants[2], nor did he show that his counsel had ever represented Teresa. Thus, he failed to prove that his counsel was constitutionally "ineffective" on such basis.

On habeas review, the respondent correctly points out that Lynch has failed to overcome the presumption of correctness for the state courts' underlying factual finding by clear and convincing evidence. DE#9, p. 32. Lynch has not put forth evidence that would substantiate his allegation of "joint representation", much less overcome the presumption of correctness. In fact, Lynch admits in his federal petition (at p. 7) that he and Teresa employed different attorneys in the divorce action and even submits a letter from David Tapp, Esq. indicating that Tapp represented Teresa after Melinda Gillum Dalton, Esq. had concluded her representation of Teresa. Lynch also submits a letter from his own counsel, Bruce Singleton, Esq., expressly indicating that he did *not* represent Teresa.

Although Lynch points to a vague reference by Teresa to some "receipts" as purported evidence of joint representation, Lynch is clutching at straws. Such reference is not specific and falls quite short of rebutting the presumption of correctness accorded the state courts' factual finding that the record plainly showed that Lynch and Teresa were represented by separate counsel. Given that their respective counsel negotiated a property division and settlement in the divorce proceeding, any "receipts" would pertain to property and/or funds released from one party to another via counsel. The Court need not speculate about such matter, as petitioner has failed to rebut the presumption of correctness accorded to factual findings by the state courts.

To the extent Lynch inconsistently argues that there was "conflict" due to the fact that his counsel represented him in the divorce and then again on a marijuana charge and in this criminal case, see DE#3, p. 9, and to the extent such representation may be characterized as "successive", petitioner does not provide any valid explanation for why this would amount to a conflict.[3] The Kentucky

---

[2]Joint representation typically refers to multiple concurrent representation of co-defendants by an attorney. See, e.g., Smith v. Hofbauer, 312 F.3d 809, 817 (6th Cir. 2002), *cert. denied*, 540 U.S. 971 (2003).

[3]Some cases indicate that "successive" representation refers to situations where counsel represents a defendant at trial and then on appeal. Whiting v. Burt, 395 F.3d 602, 619 (6th Cir. 2005). Other case have referred to it as "previous unrelated representation of a co-defendant and/or trial witness". Lordi v. Ishee, 384 F.3d 189, 193 (6th Cir. 2004).

Court of Appeals appropriately held that there was no conflict on such basis.

Although Lynch is admittedly confused about whether *Cuyler v. Sullivan* should even apply to his case, see e.g. DE#3, p. 6-7, "[t]he presumed prejudice standard for ineffectiveness claims based on a conflict of interest detailed in *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), is inapplicable to cases of successive representations." Lordi v. Ishee, 384 F.3d 189, 193 (6th Cir. 2004); and see, Whiting v. Burt, 395 F.3d 602, 619 (6th Cir. 2005) (holding that "[b]ased on Supreme Court and prior Sixth Circuit law...the District Court erred in applying the *Sullivan* standard" to claim of ineffectiveness based on an alleged conflict arising from successive representation); Moss v. United States, 323 F.3d 445, 460 (6th Cir.), *cert. denied,* 540 U.S. 879 (2003)(pointing out that, "[i]n the wake of *Mickens,* no court has applied the *Sullivan* presumption to a case of successive representation.").

In Mickens, supra, 535 U.S. at 163, 122 S.Ct. at 1239, the type of conflict at issue was successive representation, not joint representation.[4] The Supreme Court observed that although the *Sullivan* rule had been 'unblinkingly' applied by the circuits to a variety of attorney conflicts, it had never been extended by the Supreme Court to conflicts other than joint representation at trial. Id. at 1245-46. The Court indicated that the applicability of *Sullivan* to cases involving anything other than joint representation was an "open question". Id. at 1246.

Thus, to the extent Lynch argues or implies ineffectiveness based on "successive" representation, the Kentucky Court of Appeals appropriately rejected his argument. Lynch's claim fails because it is not based upon "clearly established" Supreme Court precedent as mandated by AEDPA. See Whiting, 395 F.3d at 619-620 (explaining that "expanding *Sullivan* beyond its present borders of multiple concurrent representation would result in the creation of a new rule of law--one that clearly has not been dictated by prior Supreme Court precedent."). To the extent he has argued actual conflict under *Sullivan* due to "joint representation", he has not shown any such joint representation or actual conflict.

Although Lynch cites Wood v. Georgia, 450 U.S. 261, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981) and claims that the state court decision in his case "conflicted" with such decision, his reliance on such case is misplaced. In *Wood*, the Supreme

---

[4]In Mickens, 122 S.Ct. at 1239, the Supreme Court addressed the narrow issue of "what a defendant must show in order to demonstrate a Sixth Amendment violation where the trial court fails to inquire into a potential conflict of interest about which it knew or reasonably should have known." The Supreme Court affirmed the denial of habeas relief, holding that the petitioner did not establish that a conflict of interest adversely affected his counsel's performance.

Court remanded for determination of whether an actual conflict of interest existed because the record indicated that counsel had jointly represented three employees and their employer in the same criminal proceeding. See, e.g., <u>Mickens</u>, 535 U.S. at 163, 122 S.Ct. at 1239-40, 1243 (observing that in *Wood*, the Supreme Court remanded "to determine whether a conflict of interest that the record strongly suggested actually existed" and reiterating that the term "actual conflict of interest meant precisely a conflict *that affected counsel's performance...*"). As already discussed, the record in Lynch's case plainly refutes his allegation of joint representation, and the state court rejected his claim on such basis. Lynch had no co-defendant in his murder trial, and the record plainly shows that Teresa had separate counsel in the divorce proceeding.

On federal habeas, Lynch makes the new and wholly unsupported allegation that Teresa verbally "hired" his trial counsel (in his murder trial) for "one dollar" in order to help him invoke marital privilege.[5] DE#3, p. 8. Lynch confuses the legal concepts of marital privilege and attorney-client privilege. His unsubstantiated claim is not only self-serving, but if true, would have amounted to a fraud upon the court. Moreover, he did not make this allegation on post-conviction review, and as already discussed, a habeas petitioner must argue his claims on the same ground and theory previously presented to the state courts. <u>Lorraine v. Coyle</u>, 291 F.3d 416, 425 (6th Cir. 2002), *cert. denied*, 538 U.S. 947 (2003)("Petitioner's ineffective assistance counsel claims raised on federal habeas rest on different theories than those raised in the state post-conviction proceedings, and are therefore procedurally defaulted"). Even if it were cognizable here, nothing in the record gives any credence to petitioner's latest allegation.

It is entirely implausible and unsubstantiated that Teresa's own counsel would have acquiesced in such legal shenanigan. It is equally implausible and unsubstantiated that Teresa herself would have done so, given the inherently hostile nature of the divorce proceeding and given that she willingly testified against her ex-husband at his murder trial. The record reflects that Teresa was represented by Melinda Gillum Dalton during the divorce, and subsequently, by David Tapp (see DE#8, Exh. 6, 14), whereas Lynch was represented in his divorce proceeding by Bruce Singleton. He was represented at his criminal trial by Bruce Singleton and Charles McEnroe. Upon his conviction , Lynch fired his counsel,

---

[5]The Supreme Court of Kentucky correctly held that the marital privilege was not applicable under the facts of this case, as the victim resided in the defendant's household. See Kentucky Rules of Evidence,  Rule 504 (c)(2)(C).

and was thereafter represented at sentencing by Timothy Despotes.

On habeas, Lynch has attached various exhibits of documents pertaining to his divorce proceeding and dating from 2000 to 2003. DE#8, attached exhibits. Lynch's garbled arguments indicate that he is confused about the nature of a division of property in a divorce case. The fact that one party, through counsel under an agreed order, releases physical possession of certain property to the other adverse party, and the fact that such other adverse party then uses that property (or proceeds therefrom) to pay his own legal fees to his separate counsel, does not mean that his counsel was "paid" or "retained" by the first party so as to create "joint representation". An agreed division of marital property does not create "joint representation". Lynch erroneously equates the source from which he obtained his funds for payment of his own counsel, with the establishment of a legal representation of that source. Once Lynch received property or funds under an agreed order in the divorce proceeding, it belonged to him. The fact that he then used certain proceeds to pay his counsel does not establish joint representation or any sort of "conflict" in the petitioner's subsequent criminal trial.

As the state court properly held, the record refutes the factual premise for Lynch's claims. Although Lynch attempts to show "joint representation" by claiming that Teresa "paid" some of his legal fees by releasing several vehicles in the divorce, the record shows that Lynch actually claims to have owned such vehicles. See Exh. 8, 10. The record reflects that Lynch's counsel was unable to title such vehicles because Lynch had fraudulently conveyed them to his cousin. See Exh. 8, 13. In any event, Lynch fails to state any plausible reason why Teresa, an adverse party in the divorce and a prosecution witness at Lynch's criminal trial, would have any reason to "pay" his legal fees. The state courts aptly pointed out that the record showed that Lynch had more than sufficient assets to pay his own legal fees, as he possessed $40,000.00 in cash at the time. In fact, Lynch now claims to have had even more cash in hand, namely $55,000.00, at the time of the murder.

Petitioner has also provided a letter from his trial counsel as an exhibit. See DE#8, Exh. 9. In such letter, petitioner's attorney advises another party that he represents *only* Donald Lynch, and does *not* represent Teresa. Petitioner's efforts to expand the record on habeas with such evidence has not helped his case. The state court found that petitioner and Teresa were represented by different counsel, and that Lynch's factual allegations underlying his claim of "conflict of interest" were factually baseless. The state courts' factual findings are entitled to a

presumption of correctness under the AEPDA. Lynch has not overcome such presumption of correctness by any clear and convincing evidence. In fact, much of the documentation he has submitted actually subverts his case. Petitioner's recitation of the law regarding "conflict" is unavailing, as the record plainly shows, and the state courts properly held, that there was no joint representation. Hence, petitioner's complaints of ineffectiveness due to "conflict" were properly rejected by the state courts.

In conclusion, under the AEDPA standard of review for habeas cases, petitioner has not shown that the state court decision denying his ineffectiveness claim was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States", or that it "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." The state court decision regarding lack of conflict was based on facts readily apparent in the existing court record. Petitioner's allegations provide no basis for habeas relief.

## IV. No Hearing Required

A district court must determine whether a factual dispute exists and whether the record conclusively shows that the petitioner is entitled to no relief. Only if the court finds a factual dispute and that the petitioner may be entitled to relief should it grant an evidentiary hearing. Witham v. United States, 355 F.3d 501, 506 (6th Cir. 2004). With respect to Lynch's allegation of joint representation, there are no factual disputes to resolve. See, e.g., Vroman v. Brigano, 2003 WL 22170195, *6 (6th Cir. (Ohio)). The issues in the present petition can be decided on the record before the Court, and an evidentiary hearing is not required. Blanton v. United States, 94 F.3d 227, 235 (6th Cir. 1996); Arredondo v. United States, 178 F.3d 778 (6th Cir. 1999).

## V. Certificate of Appealability

A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right", 28 U.S.C. §2253(c)(2), and shall indicate which specific issues satisfy the "substantial

showing" requirement, 28 U.S.C. §2253(c)(3); Murphy v. Ohio, 263 F.3d 466 (6th Cir. 2002)(requiring "individualized determination of each claim...in considering whether to grant a COA"); Slack v. McDaniel, 529 U.S. 473, 120 S.Ct. 1595, 146 L.Ed2d 542 (2000). The United States Supreme Court has explained that to obtain a COA, "a prisoner must demonstrate that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Banks v. Dretke, 124 S.Ct. 1256, 1280, 2004 WL 330040, *23 (2004), citing Miller-El v. Cockrell, 537 U.S. 322, 327, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).

Petitioner has not made a substantial showing of the denial of his right to effective trial counsel on the basis of alleged "conflict". The record plainly shows that Lynch and his wife were represented by separate counsel in the divorce proceeding. Lynch's counsel then continued to represent him in the murder trial at which Lynch was the sole defendant. Lynch has made no showing that his ex-wife was jointly represented by his counsel. Petitioner is not entitled to a COA.

## RECOMMENDATION

It is **RECOMMENDED** that:

a) the "Petition for Writ of Habeas Corpus" (DE#1) by the petitioner should be **DENIED with prejudice**; and

b) a certificate of appealability should not be issued.

Particularized objections to this Report and Recommendation must be filed within ten (10) days of the date of service of the same or further appeal is waived. United States v. Walters, 638 F.2d 947 (6th Cir. 1981); Thomas v. Arn, 728 F.2d 813 (6th Cir. 1984), *affirmed*, 474 U.S. 140 (1985). Poorly drafted objections, general objections or objections that require a judge's interpretation should be afforded no effect and are insufficient to preserve the right of appeal. See Howard v. Secretary of Health and Human Services, 932 F.2d 505 (6th Cir. 1991). A party may file a response to another party's objection within ten (10) days after being served with a copy thereof. Rule 72(b), Fed. R.Civ.P.

This the **1st** day of July, 2005.



Signed By:
J. B. Johnson, Jr.
United States Magistrate Judge